UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | 3:24CR186(SVN) |
| ANTHONY PENA | : | May 1, 2025 |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The Government respectfully submits this memorandum in advance of defendant

Anthony Pena's sentencing, currently scheduled for May 14, 2025 at 2:00 P.M. The defendant

stands before this Court for his part in the violent carjacking and kidnapping of a married couple

from Danbury, targeted in an attempt to extort money from their son. The crime committed by

the defendant and his compatriots was callous in the extreme, harrowing, bloody, and potentially

deadly. Furthermore, the victims have suffered lasting repercussions as a result of their

experience, far beyond their physical injuries. The factors the Court will consider all weigh in

favor of a substantial sentence in this case, one within the range set forth in the parties' plea

agreement and Presentence Report.

## I.    PROCEDURAL BACKGROUND

On September 11, 2024, the defendant was arrested on a federal criminal complaint and

presented before United States Magistrate Judge S. Dave Vatti who ordered him detained. Doc.

Nos. 9 & 12.  A federal grand jury returned an indictment against the defendant and five co-

defendants on September 24, 2024, charging all of them with conspiracy, carjacking, and

kidnapping. Doc. 17. The defendant entered a guilty plea to Counts One (conspiracy) and Three

(kidnapping), pursuant to a plea agreement, Doc. 59, on January 10, 2025. Doc. 58. The

Probation Office prepared a draft Presentence Report on March 26, 2024, Doc. 94, and the

parties provided comments and objections. Thereafter, the final Presentence Report was filed. Doc. 111.

## II.    THE PLEA AGREEMENT AND THE PRESENTENCE REPORT

The plea agreement executed by the parties includes a Guideline calculation. For a kidnapping, the base offense level under U.S.S.G. § 2A4.1(a) is 32. Two enhancements were applied -- two levels for the serious bodily injury sustained by a victim (U.S.S.G. § 2A4.1(b)(2)(B)), and another two levels for the use of a dangerous weapon (U.S.S.G. § 2A4.1(b)(3)), in this case, baseball bats, leading to an adjusted offense level of 36. Assuming the defendant meets the conditions set forth in the plea agreement (at page 4), the offense level would decrease by three, resulting in a total offense level of 33. Doc. 59 at 4. The parties preliminarily placed the defendant in Criminal History Category I; in that category, with an offense level of 33, the sentencing range is 135 to 168 months of imprisonment. *Id.* at 5. The calculation in the Presentence Report ("PSR") mirrors that in the plea agreement. *See* PSR at 10-12, ¶¶ 33-52. Thus, as to the Sentencing Guideline calculation, the parties and the Probation Office are in accord.

## III.    ARGUMENT

As the Court is well aware, 18 U.S.C. § 3553(a) provides that "[t]he court, in determining the particular sentence to be imposed, shall consider":

(1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)    the need for the sentence imposed—

    (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B)    to afford adequate deterrence to criminal conduct;

(C)     to protect the public from further crimes of the defendant; and

(D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)     the kinds of sentences available;

(4)     the kinds of sentence and the sentencing range established [in the Sentencing Guidelines];

(5)     any pertinent policy statement [issued by the Sentencing Commission];

(6)     the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)     the need to provide restitution to any victims of the offense.

The Government addresses the weight of these factors below.

A.  The Nature, Circumstances and Seriousness of the Offense and the Defendant's History and Characteristics

As demonstrated by the applicable Guidelines offense level, kidnapping is one of the more serious crimes a defendant can commit. And the kidnapping committed by the defendant and his fellow conspirators was particularly malevolent. Their plan involved stalking the victims for days. The defendants set up in the victims' neighborhood, followed them as they drove, reported on their location, and circulated photographs of their vehicles and their home to the group. *See* PSR at 8, ¶¶ 23-24; Sealed Exhibit at 7-10 (text communications). They were prepared to and did in fact employ considerable violence, beating a victim into submission with baseball bats. PSR at 5-7, ¶¶ 8-9, 14-16; Sealed Exhibit at 15-25 (photographs). They forcibly manhandled both victims into the back of a van, threatened to kill them (a believable threat given the circumstances of the abduction), and bound them, including their faces, with duct tape. *Id.* They planned to take the victims to a secluded location, PSR at 7-9, ¶¶ 17, 26-27, and hold them as pawns to extort money

3

and other assets from their son, with the assumption that the son would be unable to report the assault and kidnapping to law enforcement, thus making the parents particularly vulnerable. *See* PSR at 8, ¶ 23; Sealed Exhibit at 7-9. The defendant was right in the thick of everything the crime entailed – participating in surveillance, riding in the van when the victims' vehicle was hit, dragging the victims from their SUV, beating the male victim when he resisted, hauling them into the van, beating the male victim further while inside the van, binding them with duct tape, screaming threats to cow and intimidate. He was a ready and even enthusiastic participant and brought his younger half-brother into the plot as well. *See* PSR at 5-8, ¶¶ 8-12, 15-17, 22-24.

The crime was not spur-of-the-moment but rather involved planning and coordination. Angel Borrero contacted the defendant and the others, referred to by him as his "squad," his "boys," and his "dawgs," *see* Sealed Exhibit at 1-6, and asked them to travel from Miami to Connecticut to conduct the kidnapping, which they did without hesitation. PSR at 8, ¶ 22. Once in Connecticut, they bought supplies, including, among other items, duct tape, scissors, masks, and four baseball bats. Sealed Exhibit at 5, 15, 17, 18, 20, 24. They strung plastic sheeting in the back of the van. *Id.* at 17. And, as mentioned, they spent hours conducting surveillance of their intended victims. *See* PSR at 8, ¶ 24; Sealed Exhibit at 7-10. The actual commission of the crime also involved coordination – one person drove the Honda Civic to backend the victims' vehicle, PSR at 5-6, ¶¶ 8, 15; Sealed Exhibit at 14-15; another drove the Nissan to block the victims' egress, PSR at 7, ¶ 20; the remainder rode in the van where the victims would be hauled to be abducted and restrained. PSR at 5-6, ¶ 8, 10-11, 15; Sealed Exhibit at 15-17. And the kidnapping went nearly as planned. The Honda successfully rear-ended the victims' SUV, causing them to

stop. The Nissan and the van effectively hemmed in the victims. The defendants, Pena included, seized the victims, beat and intimidated them, dragged them into the van, wrapped their head, hands, and legs with duct tape so they were fully restrained and helpless, and sped away from the scene of the abduction. PSR at 6-7 ¶¶ 15-17; Sealed Exhibit at 22-25. The plan was thwarted by two circumstances that had nothing to do with the defendants. First, an FBI supervisory special agent happened to be driving nearby and took action to track the van. PSR at 7, ¶ 18. Second, various persons quickly alerted the police who arrived on scene in short order, leading the defendants to abandon the van with the bound victims inside and flee. PSR at 5, ¶¶ 9-11. Otherwise, the defendants could have driven to the location waiting for them in Roxbury and held the victims until the extortion part of the plan could play out. At no time did the defendant or his compatriots back out or express any concern. From the moment Borrero summoned them from Florida until their capture days later, the defendant and his co-defendants were fully on board.

And they inflicted severe and lasting harm on the victims. Both victims suffered immediate physical injury. The male victim was beaten brutally about the head and torso, with substantial injuries, including blackened eyes, facial lacerations, and a broken arm. PSR at 6-7, ¶¶ 14-16; Sealed Exhibit at 22-23. The female victim suffered abrasions on arms and legs from being dragged and had chunks of hair pulled from her scalp when the duct tape was removed. PSR at 6-7, ¶¶ 15-16; Sealed Exhibit 24-25. But beyond that, she is suffering from ongoing, debilitating anxiety that keeps her from working or leaving home without experiencing extreme panic. She cannot escape her fear that her home is being watched and that she will be a victim again. The stress on both victims is such that neither feels comfortable appearing before the Court. Further, due to the publicity from this

5

case, the male victim lost his job, endangering the family's immigration status. Their kidnapping has had long-lasting repercussions that will not be easily or quickly overcome.

In asking for a sentence below the Guidelines range, the defendant suggests that his relative youthfulness and lack of criminal history support a lesser sentence. Def. Mem. at 5-6. As to the latter, his placement in Criminal History Category I means that he has one or zero criminal history points. U.S.S.G. Sentencing Table. Accordingly, everyone in that category has spent little to no time in prison at all or within the last fifteen years. *See* U.S.S.G. § 4A1.1. The lack of prior incarceration translates into the lowest range available at any offense level and is therefore taken into account by the Guidelines. For that reason, the Sentencing Commission has stated that downward departures from Criminal History Category I based on circumstances related to criminal history typically are prohibited. U.S.S.G. § 4A1.3(b)(2)(A).[1]

As far as the defendant's age, the information provided by the defendant and his mother to the Probation Officer cuts against the suggestion that he lacks judgment or acted impulsively. According to the defendant, he has been working steadily since 2018 when he was employed as a forklift operator, a position he kept for two years. PSR at 18, ¶ 81. Thereafter, he obtained his security guard license and worked steadily and full-time in security for the next five years, up to his arrest in this case. *Id.* He told the Probation Officer that he began working second shifts as well. *Id.* He reported that he was married and worked full-time to support his child. *Id.* at 16, ¶ 69, 18, ¶ 80. The defendant's mother also called him a "worker," noting his warehouse and security jobs. *Id.* at 18, ¶ 82. If these

---

[1] The Presentence Report noted that, according to data from the Sentencing Commission, the average sentence for defendants who have been convicted of kidnapping in the last five years and were placed in Criminal Category I was 156 months. PSR at 19, ¶ 90. This average likely reflects the serious nature of the crime of kidnapping.

circumstances were reported accurately, the defendant has shown himself quite capable of making responsible choices and sustaining long-term employment. The choice to travel from Florida to Connecticut to participate in what appeared to be a lucrative kidnapping scheme may not have been a lawful choice, but the defendant's circumstances indicate that he certainly was capable of weighing the odds and acting with reason and rationality when he made that choice.

Further, unlike many defendants, Pena has the advantage of stable family connections, providing him with a strong foundation. His mother and stepfather kept watch over him and his siblings as they grew, ensuring that they remained separated from bad influences outside the home. PSR at 14, ¶¶ 63-64. Pena stated that he greatly admires his stepfather who, after a stint in prison when the defendant was a child, changed his life for the better and provided for his family. *Id.* at 14-15, ¶¶ 64-65. Further, his grandparents have always been in his life, providing a consistent, steady, and positive influence. *Id.* at 14-15, ¶¶ 64-65. His family support gave the defendant an advantage many others in his present position lack.

The Guideline range reflects the very serious nature of the offense, the substantial and lasting harm suffered by the victims, and the defendant's lack of prior convictions. The Government submits that a sentence within the applicable range is not only appropriate but also supported by the other factors the Court will consider.

B.   The Need to Promote Respect for the Law, to Provide Adequate Deterrence, and to Protect the Public

Each of these factors weighs in favor of a sentence within the Guideline range. There are others inclined to engage in criminal activity like the defendant's for reasons similar to his. Victims like the ones in this case are seen as easy targets, and the financial rewards are believed

7

to be quite high, as demonstrated by these defendants' readiness to get on a plane when summoned and spend days in a place they'd never been. A substantial sentence of imprisonment demonstrates that the consequences of engaging in this type of criminal activity are severe. The sentence here will serve as a wakeup call, not only to the defendants in this case but to others who are monitoring it.  Accordingly, the Government submits that the need for specific and general deterrence, to promote respect for the law, and to protect the public from future crime weigh strongly in favor of a sentence within the Guideline range set forth in the plea agreement and the Presentence Report.

C. The Need to Provide the Defendant with Training, Medical Care, or Treatment

The defendant does not have a high school diploma or a GED, PSR at 3, reports the use of various controlled substances, *id.* at 16-17, ¶¶ 71-74, and admitted to engaging in sports betting after separating from his wife. *Id.* at 17, ¶ 77. As the Presentence Report indicates (at 23-24, ¶ 114), the Bureau of Prisons has several programs that are designed to address these issues and enable the defendant to place himself and his family in a better, more stable condition, should he avail himself of the opportunities he'll have.  An extended opportunity to participate in BOP programs in a restricted and supervised environment may be the defendant's best chance to reverse course and change his life for the better if that is what he wants to do.

D. The Need to Avoid Disparate Sentences

Courts seek to avoid nationwide sentencing disparities for similar crimes and similar criminals. *United States v. Saez,* 444 F.3d 15, 18 & n. 2 (1st Cir. 2006) (citing cases). Defendants similarly situated to this defendant – having committed a violent kidnapping and carjacking, causing serious injury and lasting distress -- should and would be facing substantial prison

8

sentences, consistent with the applicable Guidelines range. Thus, the need to avoid sentencing disparities weighs in favor of sentencing the defendant within that range.

CONCLUSION

For the foregoing reasons, the Government respectfully submits that the facts of this case, the circumstances of this defendant, the sentencing factors set forth in 18 U.S.C. § 3553(a), and the law governing sentencing all fully support a sentence of imprisonment within the range provided in the plea agreement and the Presentence Report.

Respectfully submitted,

MARC H. SILVERMAN
ACTING UNITED STATES ATTORNEY


/s/

KAREN L. PECK
ASSISTANT U.S. ATTORNEY
Fed Bar No. CT14959
1000 Lafayette Blvd, 10th Floor
Bridgeport, CT 06604
(203) 696-3000
Karen.Peck@usdoj.gov

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 1, 2025, a copy of the foregoing Government's Sentencing Memorandum was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

_____//s//_____
KAREN L. PECK
ASSISTANT UNITED STATES ATTORNEY

10