UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

---

United States of America,

Plaintiff(s), NO. 3:24-CR-186-SVN-6

v. CHANGE OF PLEA

Ricardo Estrada, HARTFORD, CONNECTICUT

Defendant(s). February 11, 2025

---

VERBATIM REPORT OF PROCEEDINGS
BEFORE THE HONORABLE SARALA NAGALA
UNITED STATES DISTRICT JUDGE

---

APPEARANCES:

For the Plaintiff(s): Karen L. Peck
US Attorney's Office - CT
1000 Lafayette Blvd., 10th Floor
Bridgeport, CT 06640

For the Defendant(s): David J. Wenc
Wenc Law Firm, LLC
184 Dusky Lane
Suffield, CT 06078

Reported by: Denae Hovland, RPR, RMR, CRR
Federal Court Reporter
701.840.9786
denae_hovland@ctd.uscourts.gov

THE COURT: Good afternoon. We're here in Case No. 24-CR-186, United States of America vs. Ricardo Estrada. Can I begin with an appearance of counsel for the government, please.

MS. PECK: Yes, good afternoon, Your Honor. Here for the government is Assistant U.S. Attorney Karen Peck.

THE COURT: All right. Good afternoon to you.

MR. WENC: Yes, Your Honor, good afternoon. I'm Attorney David Wenc. I represent Mr. Estrada, who is seated to my left.

THE COURT: Good afternoon to you, Attorney Wenc, and good afternoon to you, Mr. Estrada.

Attorney Peck, are you going to appear on this case going forward, or are you just standing in today?

MS. PECK: I'm probably just standing in today, Your Honor. If it looks like I will, I'll be entering an appearance.

THE COURT: Okay, sounds good. So we're here today because Mr. Estrada has indicated he believes he may be prepared to enter a plea of guilty to Counts 1 and 3 of the indictment charging him with conspiracy and kidnapping in violation of Title 18, United States Code, Sections 371 and 1201(a)(1) respectively.

So, Mr. Estrada, let me give you an overview of

how this proceeding will go this afternoon.

First, I will be inquiring of the government whether it has satisfied its obligations to notify the victims of this offense of this proceeding.

Then I will turn to you and go over some rights that you have concerning this case. Because there are a number of questions I will need to ask you today that require truthful answers, the courtroom deputy will administer the oath to you.

Then I will proceed with asking you a few questions about your level of education and your state of mind today to ensure you're understanding and following what is happening here in court.

We will be talking about the fact that you're proposing to plead guilty to certain counts of the indictment that has been filed against you. We will talk about the consequences of a guilty plea, the rights that you would be giving up if you choose to plead guilty, and the maximum and possible sentences you could receive if you decide to plead guilty today.

We will also be discussing the Sentencing Guidelines and the facts of the case.

We will further discuss the written plea agreement that you are proposing to enter into with the government.

I will be asking you questions throughout the proceeding to determine if your plea is knowing and voluntary.

Toward the end of the proceeding if you still decide you want to plead guilty, the clerk of court would take your plea, and then I will set a schedule for the remaining activity in the case, including the sentencing hearing.

Now, generally this takes about 45 minutes to an hour, but I want you to know that I'm in no hurry today. Deciding whether or not to plead guilty to federal offenses is a very important decision and I want you to take all the time that you need in order to make it.

Now, if at any point I say something and you don't quite understand what I mean, just let me know and I'll rephrase it.

Also, if at any point you wish to speak to Attorney Wenc privately, just let me know that and I'll give you as much time as you need.

Now, with all of that in mind, are you ready to proceed?

THE DEFENDANT: Yes, ma'am.

THE COURT: Okay. Let me ask that you pull that microphone a little bit closer to you. Could you try that again?

THE DEFENDANT: Yes, ma'am.

THE COURT: That's much better. Thank you.

So, AUSA Peck, before we proceed further, I understand there are people who would be considered victims of these offenses. Has the government given them notice of this proceeding and does anyone wish to be heard?

MS. PECK: There are victims of this offense. It's my understanding that our victim witness coordinator has reached out and alerted them, and I have not been told that they have any desire to be heard today.

THE COURT: All right. Thank you. So, Mr. Estrada, let me proceed with advising you of certain rights that you have regarding this proceeding.

First, you have the right to remain silent. That means you're not required to say anything to anyone that might incriminate you. If you start making a statement, you can stop at any time, and if you choose to make a statement, you have the right to have your attorney with you. Do you understand all of that?

THE DEFENDANT: Yes, ma'am.

THE COURT: The reason those rights are so important is that if you do choose to make a statement, anything you say can and very likely will be used to prosecute you either in this case or perhaps in other

matters. Do you understand?

THE DEFENDANT: Yes, ma'am.

THE COURT: You also have a right to be represented by an attorney at every stage of these proceedings. You have that right even if you cannot afford to pay for an attorney yourself.

Now, Attorney Wenc is appointed by the court to represent you. If at any time you find yourself no longer represented by Attorney Wenc for some reason, you would need to let the court know. If you remained financially eligible for appointment of counsel at the court's expense at that time, I would appoint a new attorney to represent you at no cost to you. Do you understand that?

THE DEFENDANT: Yes, ma'am.

THE COURT: All right. Then moving ahead, there are going to be a number of questions I must ask you while you're under oath in order to assure me that any decisions you make today are knowing and voluntary, and to assure me that there is a factual basis for any plea you may choose to enter.

So at this time I'll ask the clerk of court to place you under oath.

RICARDO ESTRADA, having been duly sworn, testified as follows:

THE COURT: All right. Now that you are under

oath, your answers to my questions must be truthful or you may be subject to penalties for perjury or for making a false statement. Do you understand that?

THE DEFENDANT: Yes, ma'am.

THE COURT: Again, if you don't understand something I've asked you, just let me know and I'll rephrase, and if you want time to speak to Attorney Wenc before you answer a question, just let me know that as well.

Before I get to the questions, I want to emphasize that the choice between taking a case to trial and deciding to plead guilty is your choice, not your attorney's choice or anyone else's choice. It's proper for Attorney Wenc to advise you about this important decision, but ultimately the decision whether or not to plead guilty is yours and yours alone. Do you understand that?

THE DEFENDANT: Yes, ma'am.

THE COURT: And similarly, your answers to my questions today are your responsibility and yours alone.

So let me start with a few questions so that I can ensure you're understanding what's happening here today. First, can you tell me how old you are?

THE DEFENDANT: I'm 21 years old.

THE COURT: How far did you go in school?

THE DEFENDANT: High school.
THE COURT: Did you complete high school?
THE DEFENDANT: No.
THE COURT: What's the highest grade you completed?
THE DEFENDANT: Eleventh.
THE COURT: Eleventh. Have you had any difficulty communicating with Attorney Wenc for any reason?
THE DEFENDANT: No.
THE COURT: Are you now or have you recently been under the care of a physician, psychiatrist, social worker or counselor?
THE DEFENDANT: No.
THE COURT: Okay. Are you certain?
THE DEFENDANT: Yeah.
THE COURT: Okay. In the past 48 hours have you taken any narcotic drugs, medicine or pills, or drunk any alcoholic beverages that would make it difficult for you to understand things today or pay attention?
THE DEFENDANT: No.
THE COURT: Is your mind clear today?
THE DEFENDANT: Yes, ma'am.
THE COURT: Do you understand why we're here?
THE DEFENDANT: Yeah.

THE COURT: Have you had enough time to discuss your case with your attorney?
THE DEFENDANT: Yes, ma'am.
THE COURT: Has he answered the questions you've asked him?
THE DEFENDANT: Yes, ma'am.
THE COURT: Are you satisfied to have Attorney Wenc represent you today?
THE DEFENDANT: Yes.
THE COURT: All right. Attorney Wenc, did you have a chance to meet with your client before we got started today?
MR. WENC: Yes, Your Honor, and I met with him this previous weekend as well.
THE COURT: Okay. Do you have any reason to believe that he's under the influence of any substance or suffering from any condition today that would affect his ability to understand these proceedings?
MR. WENC: No.
THE COURT: Have you had any difficulty communicating with him?
MR. WENC: No.
THE COURT: Have you discussed the case with him fully?
MR. WENC: Yes.

THE COURT: Do you have any doubts at all as to Mr. Estrada's competence to plead guilty today if that is what he chooses to do?

MR. WENC: No.

THE COURT: Thank you. Now, Mr. Estrada, let me speak with you about the nature of the charges and the maximum penalties you could face if you decide to plead guilty today.

First let me ask, have you reviewed the indictment that was filed against you I believe in the fall of last year?

THE DEFENDANT: Yes, ma'am.

THE COURT: Okay. The indictment contains three counts charging you with conspiracy in Count 1, carjacking in Count 2, and kidnapping in Count 3. You are proposing to plead guilty only to Counts 1 and 3, which charge you with conspiracy and kidnapping.

The conspiracy charge accuses you of agreeing with other people to kidnap victims RC and SC between August 23rd and 25th of last year, 2024.

The kidnapping charge in Count 3 accuses you of actually kidnapping RC and SC on August 25th, 2024, and of holding them for ransom, reward or another purpose, and using a facility of interstate commerce to do so.

Do you understand the nature of the charges

against you in Counts 1 and 3 of the indictment?

THE DEFENDANT: Yes, ma'am.

THE COURT: Have you discussed the charges with your attorney?

THE DEFENDANT: Yes, ma'am.

THE COURT: Has he answered the questions you've asked about them?

THE DEFENDANT: Yes.

THE COURT: Now, let me go over the maximum penalties.

Count 1 carries the following penalties: A maximum term of imprisonment of five years, a maximum term of supervised release, which is a period of supervision by the probation office after release from custody, of three years, a maximum fine of $250,000, subject to something called the alternative fine provision I'll discuss in a moment, and a mandatory special assessment of $100.

Count 3, the kidnapping count, carries the following penalties: A maximum penalty of life imprisonment, a maximum term of supervised release of -- I believe that it's five years. The revised plea agreement that was on the bench says not more than three years, though.

MS. PECK: Your Honor, can I just grab the plea agreement that I gave him?

THE COURT: Sure.

MS. PECK: Can I approach, Your Honor?

THE COURT: Yes.

Okay. Maybe I'm looking at the wrong one. I think I'm looking at the wrong copy. Yep, I was looking at the wrong one.

Okay. Sorry for that interruption, Mr. Estrada. Let me start again with Count 3. Count 3 carries the following penalties: A maximum penalty of life imprisonment, a maximum term of supervised release of five years, a maximum fine of $250,000, again subject to the alternative fine provision I'll discuss in a moment, and a mandatory special assessment of $100.

Now, with respect to supervised release, that period of supervision after incarceration, if you were to violate any condition of supervised release, you could be required to serve a further term of imprisonment of not more than two years per revocation as to Count 1, and five years per revocation as to Count 3, with no credit for time already spent on supervised release.

Now, with respect to a monetary fine, you are subject to the alternative fine provision, which provides that the maximum fine that could be imposed upon you is the greatest of the following amounts: First, twice the gross gain to you resulting from the offense. Second,

twice the gross loss resulting from the offense. And third, one million dollars. So the highest of those three amounts.

Finally, you're also required to make restitution to victims under federal law for any losses the victims incurred. You would also be required to forfeit any property that may have facilitated the offenses or be the proceeds of the offenses, but no particular property has been identified to be forfeited here.

So, Attorney Peck, have I correctly stated the applicable penalties?

MS. PECK: You have, Your Honor.

THE COURT: I'll note on that supervised release revocation section of the plea agreement, I've split it up into what the maximum would be for revocation for Count 1 and then separately for Count 3. The plea agreement doesn't do that, but since it sets what the maximum is, I think that's still accurate to inform him of what the maximum revocation sentence could be.

MS. PECK: Yes. And, Your Honor, I wanted to, just while we're talking about supervised release, on page five, there had been a mistake as far as the guidelines supervised release term. It would be one to three years on Count 1, but it would be two to five years on Count 3,

so we've made a change here and are initialing that.

THE COURT: All right. Thank you. And does the change specify what it will be for Count 1 and 2, or does it simply say two to five years?

MS. PECK: Two to five.

THE COURT: Okay. Thank you.

Okay. Attorney Wenc, do you agree that with that clarification, I have correctly stated the penalties?

MR. WENC: Yes, Your Honor.

THE COURT: So, Mr. Estrada, I know that there has been a little bit of back and forth here, but before that I had laid out what the maximum penalties are for your offenses. Do you understand that those are the maximum penalties to which you could be sentenced if you decide to plead guilty today?

THE DEFENDANT: Yes.

THE COURT: Do you have any questions about those penalties?

THE DEFENDANT: No.

THE COURT: Okay. So now let me speak with you about the consequences of a guilty plea. The first and most important thing that you must understand is that you do not have to plead guilty even if you are guilty. Under American law, the prosecution bears the burden of proving the guilt of a defendant beyond a reasonable doubt, and if

the prosecution is unable to meet that burden of proof, the jury would have the duty to find you not guilty. Do you understand?

THE DEFENDANT: Yes, ma'am.

THE COURT: It sometimes happens in American courtrooms that juries return a verdict of not guilty even though most people watching the trial or perhaps even the people involved in the trial actually believe that the defendant committed the crime. In those cases what the jury is saying is not necessarily that the defendant was innocent. Rather, the jury is saying that the prosecution failed to meet its burden of proving the guilt of the defendant beyond a reasonable doubt. Do you understand the difference?

THE DEFENDANT: Yes.

THE COURT: So that's why I say that even if you are guilty, you still have a choice. You can require the prosecution to prove each element of its case beyond a reasonable doubt at a trial. You have an absolute right to plead not guilty and to persist in that plea. To make the government prove its case at a trial, you would say not guilty at the end of this proceeding when the clerk asks you how you plead. Do you understand you have that option?

THE DEFENDANT: Yes, ma'am.

THE COURT: Now, if you were to plead not guilty, under the Constitution and laws of the United States, you have a number of important rights.

You have the right to a speedy, public jury trial.

You have the right to participate in the jury selection process for that trial through your attorney and to object to the service of potential jurors.

You have the right to be represented by an attorney and, if necessary, have the court appoint an attorney to represent you at trial and at every other stage of these proceedings. You're currently represented by Attorney Wenc but, again, if at some point in the future you were not represented by him and you could not afford a lawyer, I would appoint a lawyer to represent you at no cost to you. Do you understand these rights?

THE DEFENDANT: Yes.

THE COURT: In the course of the trial, the witnesses for the government would have to come to court and testify in your presence. This is called your right of confrontation. Your attorney would have the right to cross-examine the witnesses for the government and to object to any evidence offered by the government.

You would have the right to offer evidence on your own behalf and to compel the attendance of witnesses

who have relevant information using the subpoena power of the court. Do you understand these rights?

THE DEFENDANT: Yes.

THE COURT: Now, at trial, while you would have the right to testify if you chose to do so, you could not be required to testify. Under the Constitution of the United States, a defendant in a criminal case cannot be forced to take the witness stand at his trial and say anything that could be used to show he's guilty of the crime with which he is charged. If you decided not to testify at your trial, I would instruct the jury that they could not hold that against you. Do you understand that right?

THE DEFENDANT: Yes.

THE COURT: At the trial, you would be presumed innocent and the government would have to overcome that presumption and prove you guilty beyond a reasonable doubt. You would have no obligation to prove that you were innocent.

If the government were to fail to meet its burden of proving each element of the offense beyond a reasonable doubt, the jury would have the duty to find you not guilty. Do you understand?

THE DEFENDANT: Yes.

THE COURT: Now, if you decide to plead guilty

today, I will need to ask you questions about what you did that makes you guilty. I would need to satisfy myself that you are, in fact, guilty of the charges to which you are seeking to plead guilty, so you would need to answer my questions and acknowledge your guilt. That means that you would be waiving at least in part your right to remain silent and your right not to say anything that might incriminate you in order to tell me what you did. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: If you plead guilty and I accept your plea, there would be no trial. You would be giving up the trial rights that I have been describing. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: You will have no right to appeal your conviction, though you may still be able to appeal the sentence that is eventually imposed by the court. We'll discuss that a bit more later.

By pleading guilty, though, you would give up the right to a jury trial on this charge. I would simply enter a finding of guilty on the basis of your guilty plea. Do you understand that's how I would proceed if you decide to plead guilty?

THE DEFENDANT: Yes.

THE COURT: Now, if you were found guilty, you may lose some important rights such as the right to vote, the right to hold public office, and the right to serve on a jury. Because you are proposing to plead guilty to a felony, you would also lose the right to possess any kind of firearms or ammunition.

You might also lose certain federal benefits.

A DNA sample will be collected from you for analysis and indexing.

The government also reserves the right to notify any state or federal agency by whom you were licensed or with whom you do business, as well as any current or future employer of the fact of this conviction.

We call these things the collateral consequences of a criminal conviction. Do you understand that a guilty plea may result in collateral consequences like these?

THE DEFENDANT: Yes.

THE COURT: Your guilty plea today may also work to your disadvantage if in the future you are found guilty of another crime because there is a possibility you could receive a more severe penalty at that time as a result of this guilty plea and conviction.

Finally, I am required to advise all defendants that there may be immigration consequences of this conviction if you're not a citizen of the United States.

If you're not a U.S. citizen, your conviction in this matter could result in your being ordered removed from the United States, being denied citizenship, and being denied admission into the United States in the future.

Additionally, if you are a naturalized U.S. citizen, a conviction in this matter could result in denaturalization and removal.

Now, this is not immigration court and I would not be making any decision as to whether you would actually be removed, but most felony convictions result in removal. And again, if you're not a citizen, you should assume that once your criminal case is closed, you could be removed from the United States and barred from returning.

Likewise, if you're a naturalized citizen, you bear the risk of denaturalization and removal after this conviction.

Do you understand that your guilty plea here could have immigration consequences?

THE DEFENDANT: Yes.

THE COURT: Do you understand all of the potential consequences of a guilty plea in this case that we have discussed here?

THE DEFENDANT: Yes.

THE COURT: All right. Now, there is a written

plea agreement between the parties. Do you have a copy of that in front of you, Mr. Estrada?

THE DEFENDANT: Yes, ma'am.

THE COURT: Have you read that agreement?

THE DEFENDANT: Yes, ma'am.

THE COURT: Have you had a full opportunity to discuss it with your attorney?

THE DEFENDANT: Yes.

THE COURT: Do you believe you understand it?

THE DEFENDANT: Yes.

THE COURT: Attorney Wenc, have you discussed the terms of the plea agreement with your client?

MR. WENC: Yes, I have.

THE COURT: Has he told you he understands its terms?

THE DEFENDANT: Yes.

THE COURT: And are you satisfied that he fully understands its terms?

MR. WENC: Yes.

THE COURT: Okay. So at this time I am going to ask the prosecutor to summarize for the record the basic terms of the plea agreement. Mr. Estrada, please listen carefully because when she is done, I am going to be asking you if the agreement that has been summarized reflects the agreement you believe you're entering into

with the government, or if there is anything that you disagree with or that has come as a surprise to you.

So, Attorney Peck, you can go ahead with outlining the terms of the agreement. Feel free to omit anything I've already covered, as well as the elements of the offense, which I'll go over in a moment.

MS. PECK: Okay. So we do set out the elements of the offense in the plea agreement. We also set out the maximum penalties, which comport with what you already advised the defendant earlier in this proceeding.

We'd note that he is pleading to Counts 1 and 3, and the agreement would be at the time of sentencing Count 2 would be dismissed.

There is an explanation of the application of the U.S. Sentencing Guidelines. Assuming the defendant meets the conditions that are set forth in the agreement, which would include truthfully admitting or not denying relevant conduct, disclosing a truthful financial statement to the U.S. Attorney's Office and the U.S. Probation Office, not continuing in criminal conduct or associations, not engaging in obstructive conduct, and not engaging in conduct that would be a violation of a condition of release, that three points would be subtracted from the offense level for acceptance of responsibility.

There is also a stipulated guidelines calculation under Section 2A4.1. I can go through that if the court would indulge me.

THE COURT: If you feel you want to put it on the record, then that's fine, sure.

MS. PECK: Okay. There is a base offense level of 32. Two levels would be added because of the serious bodily injury that was sustained by a victim. Two levels would be added for the use of a dangerous weapon, leading to an adjusted offense level of 36. Assuming the defendant received three levels off for acceptance of responsibility, his base offense -- or adjusted offense level would be 33.

He is calculated to have a criminal history category of one, with a resulting range of 135 to 168 months of imprisonment.

I should note that both sides have reserved their rights to seek a departure or non-guideline sentence, and both sides have reserved the right to argue about the appropriateness of a fine being imposed in this case.

There are waivers that the court has already gone through. They are also set forth in the agreement, the waivers of the right to trial, also a waiver of the statute of limitation for all offenses that are not

time-barred by today's date, the right to -- he's waiving his right to challenge or collaterally attack his conviction.

And I would note, Your Honor, there is also an appellate waiver of his sentence if that sentence does not exceed 135 months of imprisonment, a three-year term of supervised release, and a $200 special assessment.

And that he's also waiving the right to challenge the imposition of any condition of supervised release for which he had notice and an opportunity to object.

There is also an acknowledgment of his guilt and that the plea that he's entering into today is voluntary.

There is notice that the agreement binds only federal authorities in the District of Connecticut and no other state, federal, or local authorities.

There is an explanation of the collateral consequences, which the court has already gone through in this proceeding.

There is a provision that this plea pursuant to this agreement will satisfy the defendant's federal liability for the conduct underlying the indictment, and as I noted, we will be moving to dismiss Count 2 at the time of sentencing, and there is an acknowledgment that no other promises have been made to this defendant. And that

in sum and substance is the agreement, Your Honor.

THE COURT: Thank you, Attorney Peck. Mr. Estrada, did the prosecutor say anything that came as a surprise to you?

THE DEFENDANT: No.

THE COURT: Did she say anything you disagree with?

THE DEFENDANT: No.

THE COURT: Does the written agreement that was just outlined fully and accurately reflect your understanding of the entire agreement you plan to enter into with the government?

THE DEFENDANT: Yes, ma'am.

THE COURT: Other than the promises that are in writing in the agreement, has anyone made any other promises to you that are not in writing that have caused you to plead guilty?

THE DEFENDANT: No.

THE COURT: Has anyone threatened you into pleading guilty?

THE DEFENDANT: No.

THE COURT: Is anyone forcing or coercing you into doing so?

THE DEFENDANT: No.

THE COURT: Now let me go over two important

topics that are mentioned in your plea agreement and elaborate on them a bit.

First, I want to describe for you how sentencing works in federal court. I've explained to you that the law governing your offenses has certain statutory maximum penalties and I can sentence you up to those maximums. However, there are certain things that guide me in deciding what an appropriate sentence could be up to that statutory maximum.

One of the things that guides me is a book of advice called the U.S. Sentencing Guidelines Manual. It is published by the Sentencing Commission of the United States.

Now, before your sentencing, you, Attorney Wenc and Attorney Peck will receive a report prepared by the United States Probation Office, which is an arm of the court. The report will be called the presentence report and it will include a calculation of the Sentencing Guidelines.

In order to prepare the PSR, the probation officer will interview you, talk to some of -- perhaps your friends or family members, research your background, and also collect information from the government about the offenses.

The probation office will use this information

to calculate a guidelines range and to consider whether any downward or upward departures from that suggested guidelines range are appropriate.

I use the PSR to guide my thinking about what the guidelines range and the appropriate sentence should be.

It is important for you to know that I must consider the guidelines range in determining a sentence for you. Have you discussed the Sentencing Guidelines with your attorney?

THE DEFENDANT: Yes, ma'am.

THE COURT: Now, at the sentencing hearing, if there are factual disputes about matters relevant to your sentence, including how the guidelines should apply, I can either resolve those issues under a standard called preponderance of the evidence, which is a lower standard than the beyond a reasonable doubt standard that would apply at a trial, or alternatively, I could choose not to resolve those factual disputes if they don't make a difference to the outcome.

Now, after I've considered any factual disputes concerning your sentence, I will calculate the applicable Sentencing Guidelines range for you, including any possible departures.

In analyzing the guidelines range, I will

consider your position and the position of the government, but I need you to know that I am not bound by the plea agreement's calculation of the guidelines range. I have an obligation to calculate that range myself based on the information I receive in the PSR.

Once I calculate that guidelines range, you should also know that it is not binding on me. It is something I need to consider, but I could ultimately give you a sentence that is within the guidelines range or outside of it.

I want you to know what the factors are that the law requires me to consider in determining a sentence. They include your own history and characteristics, the nature and circumstances of the offense, the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from any future crimes you might commit, to provide you with needed educational or vocational training, medical care or other correctional treatment in the most effective manner.

I must also consider the guidelines, as I've said, the need to avoid unwarranted sentencing disparities, meaning differences between your case and the cases of others with similar records, and finally the need

to provide restitution to victims of the offense. Those are all of the things that I must consider.

In the end, your sentence may be within, above, or below the guideline range after consideration of those factors.

It's important that you understand that regardless of the guidelines range that I calculate and regardless of the sentence that I ultimately impose, you will still be bound by your guilty plea. You would have no right to withdraw your guilty plea, and the government would have no right to withdraw its agreements either.

At the end of the day, I could impose a sentence that is higher or lower than anyone expected. Do you understand all of this?

THE DEFENDANT: Yes.

THE COURT: Has anyone made any promises to you as to what your sentence will be?

THE DEFENDANT: No.

THE COURT: Do you understand that you will not be able to withdraw your guilty plea if I impose a sentence that perhaps you don't like?

THE DEFENDANT: Yes.

THE COURT: Attorney Wenc, have you discussed with your client the operation of the Sentencing Guidelines and the sentencing process in federal court?

MR. WENC: Yes, I have.

THE COURT: Have you discussed with him that neither the Sentencing Guidelines nor the parties' calculation of the guidelines range are binding on the court?

MR. WENC: Yes, I have.

THE COURT: And, finally, have you informed him that he will not be able to withdraw his guilty plea even if I impose a sentence that is outside of the ranges set forth in the plea agreement or outside of the guidelines I calculate?

MR. WENC: Yes, I have.

THE COURT: All right. Mr. Estrada, let me now speak with you about your rights to appeal. Generally, you have no right to appeal your conviction after a guilty plea unless your guilty plea is somehow unlawful or involuntary, or if there is some other defect in these proceedings here today that would not be waived by your guilty plea.

Now, someone who pleads guilty does have the right to appeal the sentence imposed by the court under certain circumstances. Importantly, any notice of appeal would need to be filed within 14 days of judgment being entered in your case. If you're unable to pay the costs of an appeal, you can file a motion to proceed with the

appeal in forma pauperis.

Now, in your plea agreement you have agreed that you will not appeal or attack your conviction in this case. Further, you have agreed that you will not appeal or attack the sentence that I impose if that sentence does not exceed the following parameters: 135 months of imprisonment, three years of supervised release, and a $200 special assessment.

Also, you have agreed that any appeal would be limited to the portion of the sentencing calculation that goes beyond these limits or that relates to an issue not addressed by these limits. So an example of this would be if I were to impose a sentence of imprisonment of 135 months and a supervised release term of four years, but the rest of your sentence fell within the limits of your plea agreement, you would only be able to appeal the supervised release issue, not the imprisonment issue or anything else.

Do you understand with that explanation the limitations on your right to appeal that are in the plea agreement?

THE DEFENDANT: Yes.

THE COURT: Is anyone forcing you to limit your right to appeal?

THE DEFENDANT: No, ma'am.

THE COURT: Other than the promises that are in writing in the agreement, has anyone promised you anything else not in writing to get you to limit your right to appeal?

THE DEFENDANT: No.

THE COURT: Is anyone forcing you or coercing you into limiting your right to appeal?

THE DEFENDANT: No.

THE COURT: Attorney Wenc, have you discussed the appeal waiver provision with your client?

MR. WENC: Yes, I have.

THE COURT: Do you believe he fully understands it?

MR. WENC: Yes.

THE COURT: Okay. Now we'll turn to the facts and evidence that would support a guilty plea to Counts 1 and 3 of the indictment.

First, you should know that every federal crime is made up of what we call elements, which are the things the government would have to prove to establish that you're guilty of a crime. The elements of each of your offenses are set forth in your plea agreement starting at the bottom of page one.

The elements of Count 1, the conspiracy charge, are as follows:

First, between about August 23rd and 25th of 2024, there existed an unlawful agreement among at least two people to violate the law, here by carjacking and kidnapping.

Secondly, you knowingly and willfully joined the conspiracy.

And third, any member of the conspiracy knowingly engaged in an overt act in furtherance of the conspiracy.

Do you understand each of these elements?

THE DEFENDANT: Yes.

THE COURT: Now, the elements of Count 3 are as follows: I am going to paraphrase them a little bit to make them a bit more understandable.

First, on or around August 25th, 2024, you and your co-defendants seized or kidnapped RC and SC.

Second, you held RC and SC for ransom or for any other reason.

Third, you used the mail or a facility of interstate or foreign commerce to do this.

And, fourth, you acted unlawfully, knowingly and willfully.

So now I am going to ask the Assistant U.S. Attorney to summarize what the government's evidence would be if you were to proceed to trial on these two counts.

Again, please listen carefully because when she is done, I'll ask you if there is anything that's come as a surprise to you or any piece of evidence or recitation of the evidence that you disagree with.

So, Attorney Peck, can you describe how the government would prove Counts 1 and 3 at a trial?

MS. PECK: Yes, Your Honor. The evidence would include testimony from multiple witnesses who saw a white Honda Civic rear-end a Lamborghini SUV on August 25th of 2024 at approximately 5:30 p.m. on Clapboard Ridge Road and Dogwood Lane in Danbury, Connecticut. These witnesses would also testify that they saw a sprinter van pull up beside the two vehicles and several men wearing dark clothes and masks get out and force the couple who had been in the Lamborghini into the back of the van. The victims were restrained and forcibly thrown into the van.

Our evidence would also include 911 recordings of various witnesses reporting the kidnapping to the police dispatch, would include the testimony of police officers who were dispatched to the scene, including those who attempted to stop the van and saw it crash.

Officers would also testify about finding four occupants of the van, four men dressed in dark clothing who attempted to flee and hide in nearby areas.

There would be the testimony of the victims who

were found in the van and freed by police. They were told by the men who had kidnapped them that they would be killed if they resisted. They would testify about being bound with duct tape and how they were held down and the male victim was beaten, and they would testify about the nature of the injuries and the trauma that they sustained.

They would also testify they heard one of the men in the van yell when they heard police sirens, and heard him say something to the effect of "Call Rick. We are in deep shit." Rick is the name used by this defendant, Mr. Estrada.

Our evidence would also include information about the vehicles that were used, that the sprinter van was rented through a service called Turo, and that a Nissan Sentra that was found near the scene and in which one of the victim's purses was found was rented from Enterprise, both rented in the name of Angel Borrero, one of the co-conspirators of this defendant and one of the four people who were apprehended near the scene.

Our evidence would also include group chats, videos, and other data from phones that have been searched during this investigation. The group texts are between the conspirators discussing, planning, coordinating this crime.

There is a video in one of the phones of this

defendant driving the Lamborghini after the victims were taken.

There are discussions of the location in Roxbury, Connecticut where the conspirators had been staying and planned to bring the victims.

There are communications that would be introduced into evidence with various people about the reason for the kidnapping and what the conspirators intended to force the victims' son to pay.

There would be cell site location information that placed this defendant's phone at the Roxbury Airbnb location after the abduction of the victims and the apprehension of the four co-conspirators near the scene.

There would be testimony from the officers who found the damaged Honda Civic at the Roxbury location, its front end damaged in a way that was consistent with it rear ending the Lamborghini. And there would be testimony that this defendant had been driving that Honda at the time that it caused the accident with the victim's car.

There would be testimony that this defendant was found in the Roxbury residence, and that officers also found balaclavas and jump ropes like the ones found in the sprinter van in the house.

There would be information provided by Airbnb about the payment of the Roxbury house by a

co-conspirator, and there would be travel information which showed this group, including this defendant, flying from Florida to New York and then traveling to Connecticut before the time of the crime.

This is a summary of the evidence. There is obviously more, but that is it in essence, Your Honor.

THE COURT: All right. Mr. Estrada, did the prosecutor say anything that came as a surprise to you?

THE DEFENDANT: No.

THE COURT: Was there anything that you disagreed with that she said?

THE DEFENDANT: No.

THE COURT: With respect to the conspiracy charge, do you agree that you joined knowingly and willfully an agreement with at least one other person to carjack and kidnap people?

THE DEFENDANT: Yes.

THE COURT: And do you agree that someone who was part of the agreement did something to further the conspiracy?

THE DEFENDANT: Yes.

THE COURT: With respect to the kidnapping charge, do you agree that you or your co-defendants kidnapped RC and SC on August 25th of last year?

THE DEFENDANT: Yes.

THE COURT: Do you agree that you held them for ransom or for any other reason?

THE DEFENDANT: Me personally holding them, no.

THE COURT: Do you agree that your co-defendants held them?

THE DEFENDANT: Yes.

THE COURT: Okay. And, Attorney Peck, specifically what were the instrumentalities of interstate commerce that the government would prove were used?

MS. PECK: At the very least, Your Honor, there would be phones that were used. There is also an argument that the cars were instruments of interstate commerce and those were used as well and rented in such a way that affects interstate commerce.

THE COURT: Okay. And they traveled from Florida?

MS. PECK: And they traveled from Florida, yes, Your Honor.

THE COURT: Do you agree, Mr. Estrada, that you traveled from Florida in order to commit this offense?

THE DEFENDANT: Yes.

THE COURT: Do you also agree that you used a cell phone in connection with the offense and that your co-defendants did as well?

THE DEFENDANT: Yes.

THE COURT: All right. Finally, do you agree that you acted unlawfully, knowingly and willfully?

THE DEFENDANT: Yes.

THE COURT: Okay. Counsel, would you have me inquire any further?

MS. PECK: No, Your Honor.

THE COURT: Attorney Wenc?

MR. WENC: No, Your Honor.

THE COURT: Okay. So, Mr. Estrada, we've discussed a lot in these last several minutes. Do you feel you understand all of the potential consequences of a guilty plea in this case?

THE DEFENDANT: Yes, ma'am.

THE COURT: If you do plead guilty, whose choice would that be?

THE DEFENDANT: My choice.

THE COURT: Would you be choosing to plead guilty freely and voluntarily because you are guilty?

THE DEFENDANT: Yes, ma'am.

THE COURT: Are you willing to give up your right to a trial on these charges?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you need any additional time to speak to your attorney before we get to the point of entering your plea and signing the plea agreement?

THE DEFENDANT: No, ma'am.

THE COURT: Okay. Then if you're prepared to sign the plea agreement, you can do that first.

MS. PECK: Your Honor, I would note that I've signed on behalf of AUSA Weingarten, and I am going to have Mr. Wenc and his client initial on page five and then sign the agreement.

THE COURT: Okay.

MR. WENC: We have an executed agreement, Your Honor. Can I approach?

THE COURT: Yes, you may.

All right. I've received the signed plea agreement. It is executed by Attorney Peck on behalf of Attorney Weingarten, as well as by Mr. Estrada and Attorney Wenc. It's also initialed on page five where the parties indicated they would do so.

The plea agreement appears to be in order. I'll accept it for filing.

All right. Mr. Estrada, it is time for you to enter your plea. You have a right to have the charges read out loud to you here in court before you enter your plea, or you can waive the reading of the charges. Would you like the charges read to you or do you waive the reading?

THE DEFENDANT: I'll waive the reading of the

charges.

THE COURT: Okay. Will the clerk of court then please take Mr. Estrada's plea to Counts 1 and 3 of the indictment.

THE CLERK: In the matter of United States of America vs. Ricardo Estrada, Case Number 24-CR-186, assigned to Judge Nagala, as to Counts 1 and 3 of the indictment charging you with violations of Title 18, United States Code, Sections 371 and 1201(a)(1), what is your plea?

THE DEFENDANT: Guilty.

THE CLERK: Your Honor, the defendant has pled guilty to Counts 1 and 3 of the indictment. You may be seated.

THE COURT: Thank you. Have you entered that plea of guilty knowingly, voluntarily, and of your own free will because you are guilty?

THE DEFENDANT: Yes, ma'am.

THE COURT: Does either counsel know of any reason why I should not accept Mr. Estrada's guilty plea today?

MS. PECK: No, Your Honor.

MR. WENC: No, Your Honor.

THE COURT: All right. Then on the basis of the answers that Mr. Estrada has given me under oath in the

presence of his counsel and on the basis of the remarks of defense counsel and the prosecutor, I hereby make the following thirteen findings.

First, Mr. Estrada is fully competent and capable of entering an informed plea.

Second, he understands the government's right in a prosecution for perjury or false statement to use any statement he gives under oath against him.

Third, he understands his right to plead not guilty and to persist in that plea.

Fourth, he understands his rights to trial by jury, including the right to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses, and he understands he would be giving up these rights if he pleaded guilty and the court accepts his plea.

Fifth, he understands the nature of the charges to which he has pleaded guilty and the penalties that attach to those charges.

Sixth, he knows the court is obligated to calculate the Sentencing Guidelines range and to consider that range, possible departure under the guidelines, and other sentencing factors under the law when determining a sentence.

And, further, he acknowledges that factual disputes at sentencing will be resolved by the court by a preponderance of the evidence standard.

Seventh, he understands he will not be permitted to withdraw his guilty plea if the calculation of the Sentencing Guidelines or the sentence ultimately imposed are different than he expected.

Eighth, he understands his right to appeal his sentence as limited by the plea agreement, and the appellate waiver in his plea was knowing and voluntary.

Ninth, he understands the potential immigration consequences of a felony conviction, as well as the other collateral consequences of the conviction.

Tenth, he understands the terms of his plea agreement and had the opportunity to review those terms with his attorney, and he accepts the terms of the plea agreement.

Eleventh, he understands the elements of the offenses to which he has pleaded guilty which the government is required to prove at a trial beyond a reasonable doubt.

Twelfth, there is a factual basis for his plea.

Thirteenth and finally, his waiver of rights and plea of guilty have been knowingly and voluntarily made, are of his own free will, were not coerced, and were not

the product of any other promises besides those contained in the plea agreement.

Accordingly, I hereby accept Mr. Estrada's plea of guilty to Counts 1 and 3 of the indictment. This matter shall be referred to the U.S. Probation Office for a presentence investigation.

So what happens now, Mr. Estrada, is that within the next few weeks Attorney Wenc will arrange for an interview of you to take place with a U.S. probation officer. He'll attend that interview with you.

As I mentioned, the probation officer will use that interview and other background research that they do to prepare the presentence report we talked about earlier.

Please bear in mind that the probation officers work for the court, and the PSR is perhaps the most important document that I will consider in determining a sentence for you, so please approach the presentence investigation process with care.

Now, once the draft report is published, please go over it with your attorney. I will be asking you at sentencing if you've read it, reviewed it, understood it, and told your attorney if you found any corrections to be made to it.

At the time of your sentencing hearing, I will hear from Attorney Wenc and from the attorney for the

government. I also invite you to speak at sentencing or to write a letter, but you should know that doing neither of those things is required.

With respect to a sentencing schedule, the day I currently have for sentencing is May 29th at 10:30 a.m. Does either counsel know of a firm and unavoidable conflict with that date as of now? It was May 29th at 10:30.

MS. PECK: I may have a conflict, Your Honor, but it may not be me, so I would say not to plan around me.

MR. WENC: I do not have a conflict.

THE COURT: All right. So here's the full sentencing schedule. The initial presentence report will be due April 17th, objections due May 1st, final PSR May 12th. Mr. Estrada's sentencing memo will be due May 15th. The government's sentencing memo will be due May 22nd. Any reply would be filed by May 26th, and the sentencing date, as I said, would be May 29th at 10:30 a.m.

All right. Is there anything further I should take up from the government's perspective?

MS. PECK: No, Your Honor.

THE COURT: And anything further from Mr. Estrada's perspective?

MR. WENC: No, Your Honor.

THE COURT: Okay. So, Mr. Estrada, I'll plan to see you next on May 29th for your sentencing unless there is some reason for a hearing before then.

The court will stand in recess. Thank you.

THE CLERK: All rise. The Honorable United States District Court for the District of Connecticut is now in recess.

(The proceedings ended at 3:59 p.m.)

C E R T I F I C A T E

I, Denae L. Hovland, RPR, CRR, RMR, Official Court Reporter for the United States District Court for the District of Connecticut, do hereby certify that the proceedings of a hearing which was held in the above-entitled action on February 11, 2025, were recorded by Denae L. Hovland by stenograph; that thereafter I transcribed in typewriting the foregoing transcript to the best of my ability; that the foregoing transcript constitutes a true and accurate transcription of the proceedings of such hearing.

/s/Denae L. Hovland
Denae L. Hovland, RPR, CRR, RMR
Official Court Reporter
United States District Court
450 Main Street
Hartford, CT 06103